NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000476
26-DEC-2018
07:51 AM

NO. CAAP-16-0000476

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Hawaii Health Systems Corporation,
dba Maui Memorial Medical Center, Plaintiff-Appellee, v.
ERIC R. BRYANT, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 13-1-1027(2))

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Reifurth)

Defendant-Appellant Eric Bryant (**Bryant**) appeals *pro se*
from the May 24, 2016 Final Judgment (**Judgment**) entered by the
Circuit Court of the Second Circuit (**Circuit Court**)[1] in favor of
Plaintiff-Appellee State of Hawaii, Hawaii Health Systems
Corporation dba Maui Memorial Medical Center (**Maui Memorial**).
Bryant also challenges the Circuit Court's October 5, 2016
Findings of Fact and Conclusions of Law and Order (**Order**).

Bryant's brief fails to comply with Hawai'i Rules of
Appellate Procedure (**HRAP**) Rule 28[2] and it is difficult to

---

[1]    The Honorable Peter T. Cahill (**Judge Cahill**) presiding.

[2]    HRAP Rule 28 provides, in relevant part:

    **Rule 28.   BRIEFS.**

(continued...)

discern his points of error.[3]  However, we are able to construe Bryant's points of error as follows:  (1) that Judge Cahill abused his discretion in failing to recuse himself upon Bryant's request; (2) that the Circuit Court erred in admitting Bryant's hospital financial records; and (3) that the Circuit Court erred in failing to dismiss the action because Bryant sufficiently "proved for the record" the elements for the affirmative defense of accord and satisfaction.[4]

---

[2](...continued)

. . .

**(b) Opening Brief.**  Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:

. . . .

(4) A concise statement of the points of error set forth in separately numbered paragraphs.  Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency.

[3]  Specifically, Bryant lists nine items in a section entitled "Assignment of Errors," but lists six "Point[s] of Appeal" in his Argument section, which do not correspond with the "Assignment of Errors" section. Many of his points are merely additional arguments in support of the three broad points of error outlined above and are incorporated accordingly herein.

[4]  Bryant also asserts that the Circuit Court judge erred by holding an "ex-parte hearing" with Maui Memorial, that the court "accepted the opinions of counsel instead of evidence based on competent testimony," and that the Circuit Court lacked subject matter jurisdiction by its "misapplication of the rules of civil procedure and Hawaii Appellate court and other court precedence concerning Accord and Satisfaction," thus denying him "due process of law and a meaningful trial."

However, Bryant does not identify where in the record these errors are alleged to have occurred and we are unable to locate any such arguable errors.  Bryant also does not argue these points further in his brief and does not cite any legal authority in support.  As Bryant has failed to present these points in accordance with the rules, we disregard them.  HRAP Rule 28(b)(4) ("Points not presented in accordance with this section will be disregarded . . . ."); see also HRAP Rule 28(b)(7) (providing that the argument must contain "the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on," and that "[p]oints not argued may be deemed waived").

Additionally, Bryant argues that a "[d]e novo review of the record made in the court below shows defendant, not plaintiff, was entitled to
(continued...)

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Bryant's points of error as follows:

(1) Regarding a request for disqualification or recusal, we apply a two-part analysis to determine, first, whether the alleged bias is covered by Hawaii Revised Statutes (**HRS**) § 601-7 (2016),[5] which pertains only to cases of affinity or consanguinity, financial interest, prior participation, and personal bias or prejudice. See Chen v. Hoeflinger, 127 Hawai'i 346, 361, 279 P.3d 11, 26 (App. 2012) (summarizing HRS § 601-7). Where a judge's alleged bias does not fall within the statutory grounds for disqualification, we "conduct[] the broader inquiry

---

[4](...continued)
summary judgment." However, this case was decided at trial, and Bryant did not move for summary judgment at any point during the proceedings. Thus, we do not review here the Circuit Court's ruling regarding summary judgment.

[5] HRS § 601-7 provides, in relevant part:

§ 601-7 Disqualification of judge; relationship, pecuniary interest, previous judgment, bias or prejudice.
(a) No person shall sit as a judge in any case in which:
(1) The judge's relative by affinity or consanguinity within the third degree is counsel, or interested either as a plaintiff or defendant, or in the issue of which the judge has, either directly or through such relative, a more than de minimis pecuniary interest; or
(2) The judge has been of counsel or on an appeal from any decision or judgment rendered by the judge;
provided that no interests held by mutual or common funds, the investment or divestment of which are not subject to the direction of the judge, shall be considered pecuniary interests for purposes of this section; and after full disclosure on the record, parties may waive disqualification due to any pecuniary interest.
(b) Whenever a party to any suit, action or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein.

of whether 'circumstances fairly . . . give rise to an appearance of impropriety and . . . reasonably cast suspicion on [the judge's] impartiality.'" State v. Ross, 89 Hawai'i 371, 377, 974 P.2d 11, 17, (1998) (quoting State v. Brown, 70 Haw. 459, 467 n.3, 776 P.2d 1182, 1188 n.3 (1989)). "[T]he test for disqualification due to the 'appearance of impropriety' is an objective one, based not on the beliefs of the petitioner or the judge, but on the assessment of a reasonable impartial onlooker apprised of all the facts." Id. at 380, 974 P.2d at 20.

Bryant does not argue a statutory ground for disqualification, but asserts that Judge Cahill abused his discretion by refusing to recuse himself "after he had a known and declared conflict of interest on the record, as the Plaintiff [the State] was the judge's employer." Bryant further asserts that Judge Cahill exhibited an appearance of impropriety when he "yell[ed]" at Bryant and through his "acts and mannerism[s] in court." Finally, Bryant asserts that Judge Cahill "showed gross prejudicial behavior" in favor of Maui Memorial by "rul[ing] against practically all of [Bryant]'s motions even while assisting [Maui Memorial] by questioning the witness for [Maui Memorial]'s benefit."

As to Bryant's first argument, we reject the premise that every judge in the state possesses an inherent conflict of interest in any case in which the State is a party. Bryant's argument that this relationship necessarily presents a "clear appearance" of impropriety is without merit because, inter alia, "'bad appearances alone do not require disqualification.'" Ross,

4

89 Hawai'i at 380, 974 P.2d at 20 (quoting <u>Del Vecchio v.</u>
<u>Illinois Dept. of Corr.</u>, 31 F.3d 1363, 1372 (7th Cir. 1994)). A
judge should only disqualify himself or herself in a proceeding
in which his or her impartiality might *reasonably* be questioned
based on the "assessment of a reasonable impartial onlooker
apprised of all the facts." <u>See</u> <u>id.</u> 974 P.2d at 20; Revised Code
of Judicial Conduct (**RCJC**) Rule 2.11.[6]

Viewed objectively, it is not reasonable to assume that
every Hawai'i judge is inherently partial toward a state-funded
hospital solely by virtue of the judge being an employee of the
State. Bryant does not assert any other facts specific to Judge
Cahill indicating that his individual impartiality could
reasonably be questioned in this case on the basis of a conflict
of interest, and we find nothing in the record to support this
conclusion.

We also reject Bryant's argument that Judge Cahill
exhibited bias through his acts or mannerisms or by "yell[ing]"
at Bryant. Bryant fails to cite any specific acts or mannerisms
that would indicate bias or an appearance of prejudice and
impartiality. Moreover, we have previously recognized that even
if a transcript could convey nonverbal expressions of disfavor,
such expressions do not rise to the level of impropriety
necessary for disqualification. <u>State v. Higa</u>, 126 Hawai'i 247,

---

[6]     RCJC Rule 2.11 provides, in relevant part:

**Rule. 2.11. DISQUALIFICATION OR RECUSAL**
        (a)  Subject to the rule of necessity, a judge shall
disqualify or recuse himself or herself in any proceeding in
which the judge's impartiality might reasonably be
questioned . . . .

260, 269 P.3d 782, 795 (App. 2012). We are unable to conclude that Judge Cahill's conduct toward Bryant exhibited an appearance of impropriety and bias.

As to the assertion that Judge Cahill's adverse rulings on "practically all of [Bryant]'s motions" indicate prejudice, the supreme court has squarely determined that parties "may not predicate their claims of disqualifying bias on adverse rulings, even if the rulings are erroneous." Ross, 89 Haw. at 378, 974 P.2d at 18. Additionally, the Circuit Court's questioning of Maui Memorial's witness does not, on its own, create an issue of bias or an appearance of impropriety, as "[t]he court may interrogate witnesses, whether called by itself or by a party." Hawai'i Rules of Evidence (**HRE**) Rule 614(b).[7]

We conclude the Circuit Court judge did not abuse his discretion in refusing to recuse himself.

(2) Bryant contends that the Circuit Court erred in admitting his hospital financial records as evidence of the amount owed because Maui Memorial's witness, Sharon Nomura (**Nomura**), the patient financial services manager at Maui Memorial, lacked sufficient personal knowledge to lay a foundation for them. Specifically, Bryant contends that Nomura was "incompetent," as "she was not the creator of the records

---

[7] HRE Rule 614, provides, in relevant part:

> **Rule 614  Calling and interrogation of witness by court.** (a) Calling by court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.
> (b) Interrogation by court. The court may interrogate witnesses, whether called by itself or by a party.

that were introduced as evidence" and "lacked personal knowledge and recollection."

As an exception to the hearsay rule, "[h]ospital records . . . made and kept in the regular course of the hospital's business, have been found to be admissible into evidence as business records where qualified in accordance with the applicable business record statute." State v. Torres, 60 Haw. 271, 276, 589 P.2d 83, 86 (1978). Under the statute, such records are qualified "by the testimony of the custodian or other qualified witness." HRE Rule 803(b)(6).[8] In addressing what constitutes a "qualified witness," the supreme court has stated:

> "The phrase 'other qualified witness' is given a very broad interpretation. The witness need only have enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business. The witness need not have personal knowledge of the actual creation of the documents or have personally assembled the records."

---

[8]    HRE Rule 803(b)(6), provides in relevant part:

    **Rule 803   Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

    . . . .

    (b)    Other exceptions. . . .

    (6)    Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, as shown by the testimony of the custodian or other qualified witness, or by certification that complies with rule 902(11) or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.

7

U.S. Bank N.A. v. Mattos, 140 Hawai'i 26, 32, 398 P.3d 615, 621 (2017) (quoting State v. Fitzwater, 122 Hawai'i 354, 366, 227 P.3d 520, 532 (2010)).

We conclude that the Circuit Court did not abuse its discretion in admitting Bryant's records. Nomura testified that she has worked for Maui Memorial in their patient financial services office for over eleven years, and she explained in detail the record-keeping system for insurance claim submission and patient billing. She also testified that the specific record detailing Bryant's account, the basic patient account information page, is "created when the patient is registered by our patient access department" and that any resulting billing statements are automatically generated. Contrary to Bryant's argument, the Circuit Court was not required to find that Nomura was individually responsible for or present during the preparation of the records in question. We conclude that Nomura's testimony established "enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business" and adequately described how these particular records were prepared. HRE Rule 803(b)(6); Torres, 60 Haw. at 277, 589 P.2d at 87. Accordingly, the requirements for admissibility of Bryant's patient account records were met, and the Circuit Court did not abuse its discretion in admitting the records.

(3) At trial, Bryant sought to establish the elements of the affirmative defense of accord and satisfaction, relying on a $12,500 check with the notation "payment in full for services

rendered" that he sent to the Maui Memorial lockbox and which was processed and applied to his accounts. On appeal, Bryant asserts that he "proved for the record" accord and satisfaction and that the Circuit Court "failed to follow the precedence" of this court in refusing to "[d]ismiss [Maui Memorial's] case with prejudice."

This court has previously held that "an effective accord and satisfaction requires the following prerequisites: (1) existence of a 'bona fide dispute' between the parties involved, (2) tender by the obligor which gives the obligee adequate notice that a compromise is being proposed, and (3) effective acceptance of the compromise offer in order to discharge the original obligation." Rosa v. Johnston, 3 Haw. App. 420, 423, 651 P.2d 1228, 1232 (1982). Where accord and satisfaction is attempted by "use of instrument," the applicable statute requires also that the payor "in good faith tendered an instrument to the claimant as full satisfaction of the claim" and that the claimant "obtained payment of the instrument." HRS § 490:3-311(a) (2008).[9]

---

[9]     HRS § 490:3-311 provides:

> **§ 490:3-311   Accord and satisfaction by use of instrument.**   (a)   If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
>      (b)   Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.
>      (c)   Subject to subsection (d), a claim is not discharged under subsection (b) if either of the following applies:

(continued...)

"Good faith" is further defined as not only "honesty in fact and the observance of reasonable commercial standards of fair dealing." Id. at 490:3-103(a)(4). Whether Bryant tendered the instrument in good faith is a mixed question of law and fact that we review for clear error. See, e.g., Del Monte Fresh Produce (Hawaii), Inc. v. Int'l Longshore & Warehouse Union, Local 142, AFL-CIO, 112 Hawai'i 489, 501, 146 P.3d 1066, 1078 (2006) ("[W]hether an employer has bargained in good faith presents a mixed question of law and fact reviewed under the clearly erroneous standard.").

We conclude that the Circuit Court did not clearly err in determining that Bryant failed to establish that he tendered the instrument in good faith. The Circuit Court found, and the record supports the conclusion, that Bryant "admitted during his testimony that at no time had he contacted the billing department

---

[9](...continued)

    (1)    The claimant, if an organization, proves that (i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (ii) the instrument or accompanying communication was not received by that designated person, office, or place.

    (2)    The claimant, whether or not an organization, proves that within ninety days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This paragraph does not apply if the claimant is an organization that sent a statement complying with paragraph (1)(i).

    (d)    A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

of [Maui Memorial] in a good faith attempt to resolve or settle the amount [Maui Memorial] claimed he owed." Additionally, the record supports the Circuit Court's finding that Bryant "never spoke with or otherwise contacted the Deputy Attorney General assigned to this matter to discuss any proposed settlement, nor advised him or the [Maui Memorial] billing department that the check drawn on the account of Trade Resources had been submitted as payment in full." Accordingly, substantial evidence supports the Circuit Court's determination that Bryant's actions "failed to constitute a good faith effort to resolve all claims." Because the Circuit Court did not err in finding that Bryant failed to establish the "good faith" prerequisite for a successful accord and satisfaction defense, we reject Bryant's point of error that he proved each and every element of this defense at trial.

For these reasons, the Circuit Court's May 24, 2016 Judgment is affirmed.

DATED: Honolulu, Hawai'i, December 26, 2018.

On the briefs:

Eric R. Bryant,
Defendant-Appellant *Pro Se.*

Michael S. Vincent,
Ryan S. Endo,
Deputy Attorneys General,
State of Hawai'i,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

11